## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

Volney McGhee,

        Petitioner,

        v.

Tarry Williams,[1]

        Defendant.

Case No. 13 C 706

Judge John Robert Blakey

## MEMORANDUM OPINION AND ORDER

Petitioner Volney McGhee brings a Petition for Writ of Habeas Corpus ("Petition") [9] pursuant to 28 U.S.C. § 2254, challenging his convictions entered in the Circuit Court of Cook County. Petitioner was convicted of the first degree murder of Melvin Thorton and the attempted murder of Michael Hopson. He was sentenced to 40 years of imprisonment for murder and a concurrent 30 year term for attempted murder. Ex. D at 1. For the following reasons, this Court denies the Petition, and declines to issue a certificate of appealability.

### I.   Legal Standard

Federal review of state court decisions under § 2254 is limited. With respect to a state court's determination of an issue on the merits, habeas relief can be granted only if the decision "was contrary to, or involved an unreasonable application of, clearly established Federal law," or "was based on an unreasonable

---

[1] Tarry Williams is the current warden of Stateville Correctional Center where Petitioner is incarcerated. Tarry Williams is therefore the "state officer having custody of the applicant," and is substituted for Michael Lemke as the named respondent in this case. *See* Habeas Rule 2; *Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004); *Bridges v. Chambers*, 425 F.3d 1048, 1049-50 (7th Cir. 2005).

determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2); *Harrington v. Richter*, 562 U.S. 86, 100 (2011). This Court presumes that the state court's account of the facts is correct, and Petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see Coleman v. Hardy*, 690 F.3d 811, 815 (7th Cir. 2012).

State prisoners must give the state courts "one full opportunity" to resolve any constitutional issues by "invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). If a petitioner asserts a claim for relief that he did not present in the first instance to the state courts, the claim is procedurally defaulted and "federal courts may not address those claims unless the petitioner demonstrates cause and prejudice or a fundamental miscarriage of justice if the claims are ignored." *Byers v. Basinger*, 610 F.3d 980, 985 (7th Cir. 2010).

## II.    Background and Procedural History

This Court begins by summarizing the facts and procedural posture from the state court record [19] (attaching Exhibits A to R). This Court presumes that the state court's factual determinations are correct for the purposes of habeas review as Petitioner does not point to clear and convincing contrary evidence. 28 U.S.C. § 2254(e)(1).

### A.     Trial

At trial, Michael Hopson, who had three prior felony drug convictions, testified that he was with victim Melvin Thornton in the late hours of March 18, 1999. Ex. D at 2; Ex. R at V17-18, X106.[2]  Hopson and Thornton drove from a night club in Bellwood to a Chicago gas station. Ex. D at 2; Ex. R at V19-25.  While Thornton was in line to buy "blunts" at the station, Hopson saw a red Oldsmobile Cutlass drive by the location.  Ex. D at 2; Ex. R at V26-27, V32.  Hopson recognized Petitioner as the back-seat passenger, who was hanging out of the window giving him a threatening look as the Cutlass drove by slowly.  Ex. D at 2; Ex. R at V28-29, V80-81.  Hopson had seen Petitioner in the same red Cutlass on a prior occasion. Ex. R at V31-32.  Hopson testified, without further explanation, that Petitioner had "bad feelings" against him, but not against Thornton.  Ex. D at 2; Ex. R at V101. The Oldsmobile drove by a second time soon after.  Ex. D at 2; Ex. R at V33.  Both times the car passed, its three occupants stared at Hopson.  Ex. R at V28, V30, V36. Hopson tried to warn Thornton, who was still in line.  Ex. D at 2; Ex. R at V36-37. Thornton did not react to those warnings.  Ex. R at V36-37.

When the Cutlass pulled into the station, Hopson observed petitioner exit the vehicle and pull up his black hood.  Ex. D at 2; Ex. R at V39, V42-43.  Hopson saw what appeared to be a .40 caliber firearm in Petitioner's right hand.  Ex. D at 2; Ex. R at V43, V117.  Petitioner ran towards him and raised his gun.  Ex. D at 2; Ex. R at V43.  As Hopson reversed his car across an adjacent street in an attempt to escape the Petitioner, he heard two shots fired towards him.  Ex. D at 2; Ex. R at

---
[2] All Exhibit cites are to the Exhibits filed with the Response [19].

V44-45. From across the street, Hopson saw Petitioner walk backwards towards Thornton, and Thornton raise his hands when Petitioner turned to face him. Ex. D at 2; Ex. R at V46-48. Petitioner pointed his gun at Thornton's face and shot him. Ex. D at 2; Ex. R at V48. As Thornton fell to the ground, Petitioner shot him again. Ex. D at 2-3; Ex. R at V48.

Ebonee Pruitt testified that her friends, Crystal and Tiffany, introduced her to Hopson and Thornton on the night of the shooting. Ex. D at 3; Ex. R at W57-59. The three women followed Hopson and Thornton from the night club to the gas station in a separate car. Ex. D at 3; Ex. R at W60. Crystal drove Pruitt's car, and Pruitt sat in the front passenger seat. Ex. D at 3; Ex. R at W58. At the station, Hopson parked his car in front of and perpendicular to Pruitt's car. Ex. D at 3; Ex. R at W60-62. Pruitt saw Hopson reverse his car when a man wearing all black, including a black hooded sweatshirt, approached Hopson's car pointing a gun. Ex. D at 3; Ex. R at W62. Pruitt heard shots while Hopson's car drove in reverse. Ex. D at 3; Ex. R at W62-63. The shooter then turned toward Thornton, who was standing nearby with his hands raised, and shot him. Ex. D at 3; Ex. R at W63- 64. The shooter fired again after Thornton fell to the ground. Ex. D at 3; Ex. R at W65. Between the two shots, Pruitt saw the shooter's face because he turned toward her as Crystal drove Pruitt's car in reverse. Ex. D at 3; Ex. R at W65-66. Pruitt had never seen him before. Ex. D at 3; Ex. R at W95. At trial, Pruitt identified Petitioner as the man who shot Thornton. Ex. R. at 66-67. She did so in the first instance without reference to any exhibits. *Id.*

Dr. Edmund Donoghue, Chief Medical Examiner for Cook County, testified that Thornton's autopsy revealed two gunshot wounds: one to the head and one to the thigh. Ex. D at 3; Ex. R at W9, W12-14, W16. Dr. Donoghue opined that Thornton died of multiple gunshot wounds. Ex. D at 3-4; Ex. R at W22.

Multiple other witnesses gave testimony relating to the identification of Petitioner as the shooter. Sergeant Wolverton spoke with Hopson the day after the shooting. Ex. R at X74. At that time, Hopson named Petitioner as Thornton's shooter and later that day picked the Petitioner out of a police photo array. Ex. D at 4; Ex. R at X74-76. At trial, Sergeant Wolverton identified Petitioner as the man Hopson had identified as the shooter. *Id.* Hopson himself testified at trial that he had identified Petitioner in a lineup as the shooter. Ex. R at V56-57, V63-64. Pruitt identified Petitioner as Thornton's shooter in court, Ex. R. at W66-67, and she also testified that she had identified him in a lineup. Ex. R at W69-71. Detective Jaglowski testified that, approximately two and a half months after the shooting, both Hopson and Pruitt identified Petitioner as the shooter from a police lineup. Ex. D at 4-5; Ex. R at X93-97.

Officer Gana testified that he located Petitioner on June 2, 1999, and brought him to the police station for questioning. Ex. D at 4; Ex. R at W115-16. Gana also inventoried and towed a red 1995 Oldsmobile Cutlass that was parked in front of the house where Petitioner was arrested. Ex. D at 4; Ex. R at W114, W116-17. The car was registered to Petitioner and his grandfather. Ex. D at 4; Ex. R at W120. Hopson and Pruitt both identified a picture of the car as the one Petitioner had been

riding in on the night of the shooting.  Ex. R at V61-62 (Hopson); Ex. R at W71-72 (Pruitt).

Police officers and eyewitnesses confirmed that the 24 hour gas station was well lit from both the gas station lighting and street lighting.  Ex. D at 4; Ex. R at V59 (Hopson), W44 (Officer Vasavid), W73 (Pruitt), X14 (Investigator Kostecki), X64-65 (Sergeant Wolverton).  Bullet casings and one live round found at the scene near the victim were .40 caliber.  Ex. D at 4; Ex. R at W44-45, X68.  Forensic firearms experts confirmed that the casings and bullet were .40 caliber and that the casings were all fired by the same firearm.  Ex. D at 4; Ex. R at X7-11, X53-58.

Laura Higgs, the grandmother of Petitioner's wife, testified that Petitioner arrived at her house at 11:30 p.m. on March 18, 1999, and stayed the entire night. Ex. D at 5; Ex. R at X107, X110-12.  On cross-examination, Higgs testified that she did not remember telling an investigator that she did not want to be interviewed. Ex. D at 5; Ex. R at X117-18.  An investigator later testified for the State that he had called Higgs and asked her whether she was willing to be interviewed about Petitioner's case, and Higgs replied that she had nothing to say.  Ex. D at 5; Ex. R at Y9, Y12.

The jury found Petitioner guilty of murder and attempted murder.  Ex. D at 5; Ex. R at Y89.  He was sentenced to 40 years of imprisonment for murder and a concurrent 30 year term for attempted murder.  Ex. D at 1.

### B. Direct Appeal

Petitioner appealed his conviction to the Illinois Appellate Court.  On appeal, Petitioner claimed that:

1. There was insufficient evidence of his guilt beyond a reasonable doubt for murder and attempted murder where eyewitness testimony of the shooting conflicted with each other and with the physical evidence, and were otherwise unworthy of belief;

2. Trial counsel was ineffective for: (1) promising in her opening statement that there would be evidence that Petitioner did not match the description of the suspect, when that evidence was inadmissible hearsay, and later referring to that evidence in closing argument even though it had not been admitted; and (2) failing to move for a mistrial or to strike testimony of identifications of Petitioner as the shooter that were hearsay, and references that the crimes were gang and drug related;

3. The prosecution's closing argument improperly impugned the reputation of defense counsel and misstated the law; and

4. The mittimus should be corrected to reflect the correct number of days of credit for pretrial custody.

Ex. A; *see also* Ex. H at C24; Pet. 2-3.[3]  The Appellate Court rejected the first three grounds for appeal, thereby affirming Plaintiff's conviction, but the Court modified the mittimus.  Ex. D at 20; Pet. 2.

Petitioner's ensuing petition for leave to appeal ("PLA") to the Illinois Supreme Court renewed only the second claim (ineffective assistance of trial counsel).  Ex. E.  It did not include any of the other claims from Petitioner's direct appeal.  *Id.*  The Illinois Supreme Court denied the PLA, Ex. F.

Subsequently, the United States Supreme Court denied Petitioner's Petition for a Writ of Certiorari on October 11, 2005.  Ex. G.

---

[3] The Court cites to the page numbers from the bottom right hand corner for Exhibits H & I, and to the Petitioner's handwritten page numbers for the Petition.

### C.     Post-Conviction Proceedings

On October 14, 2005, Petitioner filed a pro se post-conviction petition in the Cook County Circuit Court pursuant to the Illinois Post-Conviction Hearing Act, 725 ILCS 5/122-1, *et seq.*   Ex. H.   Counsel later filed an amended post-conviction petition, Ex. I, that raised several claims:

1. Trial counsel was ineffective for failing to: (a) offer evidence that Petitioner's car could not have been used during the crime because it was inoperable, Ex. I at C127-29; Pet. 4; (b) impeach State's witnesses about the car they observed at the crime scene, Ex. I at C130-33; Pet. 5; (c) move to strike Pruitt's lineup identification of Petitioner due to suggestiveness, Ex. I at C134-35; Pet. 5; (d) present expert testimony about the unreliability of eyewitness identifications, Ex. I at C136-38; Pet. 5; (e) object to testimony about Pruitt's military service, Ex. I at C139-40; Pet. 5-6; (f) call Petitioner's wife as an additional alibi witness, Ex. I at C141-42; Pet. 6; and (g) challenge Petitioner's sentence, Ex. I at C143-44; Pet. 6;

2. Appellate counsel was ineffective for:

    i. Failing to argue that trial counsel was ineffective for: (a) not impeaching State's witnesses about the car they observed at the crime scene, Ex. I at C130-33; Pet. 5; (b) not moving to strike witness Pruitt's lineup identification of petitioner due to suggestiveness, Ex. I at C134-35; Pet. 5; (c) not objecting to testimony about Pruitt's military service, Ex. I at C139-40; Pet. 5-6; (d) not challenging petitioner's sentence, Ex. I at C143-44; and (e) not preserving a challenge to the trial court's failure to poll the jury, Ex. I at C145; and

    ii. Failing to argue that the trial court erred by not polling the jury upon defense counsel's request, Ex. I at C145; Pet. 6; and

3. The cumulative effect of all errors warrants post-conviction relief, Ex. I at C146; Pet. 6.

The trial court dismissed the petition, Ex. J at II-24, and on March 1, 2011, Petitioner filed a post-conviction appeal with the Illinois Appellate Court.   Ex. K. On post-conviction appeal, Petitioner raised the following claims:

1. Trial counsel was ineffective for failing to: (a) offer evidence that Petitioner's car could not have been used during the crime because it was inoperable, Ex. K at 12-16; (b) impeach the State's witnesses about the car they observed at the crime scene, Ex. K at 16-17; (c) call Petitioner's wife as an additional alibi witness, Ex. K at 17-18; (d) object to the State showing Pruitt a photo that was already marked, Ex. K at 19-20; (e) present expert testimony about the unreliability of eyewitness identifications, Ex. K at 20-24; (f) object to testimony about Pruitt's military service, Ex. K at 25- 26; and (g) challenge petitioner's sentence, Ex. K at 26-28;

2. Appellate counsel was ineffective for failing to: (a) challenge the trial court's failure to poll the jury upon request, Ex. K at 28; and (b) "raise the issues discussed above, including: trial counsel's failure to impeach State's witnesses and objection to improper evidence; and counsel's failure to challenge the sentence," Ex. K at 28-29; and

3. The cumulative effect of all errors warrants post-conviction relief.  Ex. K at 29-30.

The Appellate Court affirmed the Circuit Court's dismissal of Petitioner's petition.

Ex. N; Pet. 6.  Petitioner (through counsel) then filed a PLA with the Illinois

Supreme Court.  Ex. O.  Broadly construed, the PLA included four claims:

1. The trial court's failure to poll the jury upon request was structural error, Ex. O at 5;

2. Trial counsel was ineffective for failing to preserve the jury polling claim, Ex. O at 10;

3. Appellate counsel was ineffective for failing to claim that the trial court erred by not polling the jury, Ex. O at 6; and

4. Appellate counsel was ineffective for failing to raise trial counsel's ineffectiveness in failing to object to the trial court's error of not polling the jury.  Ex. O at 10.

On May 30, 2012, the Illinois Supreme Court denied the PLA.  Ex. P.  One month

later, the Illinois Supreme Court received from the petitioner a *pro se* motion for

leave to file a late PLA, along with the proposed PLA.  Ex. Q.  On July 3, 2012, the

Clerk of the Supreme Court returned those documents to Petitioner along with a letter that read: "On July 2, 2012, the Clerk's office received your motion for leave to file late petition [sic] for leave to appeal with enclosed petition in the above case [captioned No. 113927]. Please be advised that because a petition for leave to appeal was filed on February 29, 2012 (denied May 30, 2012), in the above case, by Attorney Colleen M. Morgan on your behalf, you cannot file a motion for leave to file a late petition for leave to appeal. Your unfiled documents are being returned to you." Ex. Q. The late PLA which Petitioner sought leave to file included the following claims:

1. Trial counsel was ineffective for failing to: (a) offer evidence that Petitioner's car could not have been used during the crime because it was inoperable, Ex. Q at 3; (b) impeach the State's trial witnesses (Hopseon and Pruitt) about the inconsistencies in their testimony, Ex. Q at 3-7; (c) call Petitioner's wife as an additional alibi witness, Ex. Q at 7; (d) object to the State showing Pruitt a photo that was allegedly marked, Ex. Q at 8; (e) present expert testimony about the unreliability of eyewitness identifications, Ex. Q at 9; and (f) object to testimony about Pruitt's military service, Ex. Q at 12-13;

2. Appellate counsel was ineffective for failing to raise "the issues discussed above, including: trial counsel's failure to impeach State's witnesses and objection to improper evidence," Ex. Q at 14; and

3. The post-conviction appellate court erred in affirming the Circuit Court's dismissal without an evidentiary hearing. Ex. Q at 3.

## III. Petitioner's Federal Habeas Corpus Claims

On March 5, 2013, Petitioner filed the instant Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. [1] Pet. There, the Petitioner alleged three general claims, within which there are various sub-claims. This Court's analysis is best structured along those same lines. In other words, because the sub-claims

within each claim family are subject to the same arguments, the Court will address the claims as three distinct claim families. For ease of reference, the Court will refer to each general claim as a "Claim Family;" and will refer to those Claim Families and their constituent sub-claims as set out in the below charts. Each sub-claim lists the section of the AEDPA under which it arises.

| Chart 1 - Claim Family #1 |
|---|
| **Claim 1.1** - A §2254(d)(1) claim that trial counsel was ineffective for promising in her opening statement that there would be evidence that Petitioner did not match the description of the suspect, when that evidence was inadmissible hearsay, and later referring to that evidence in closing argument even though it had not been admitted. Pet. 12-13. |
| **Claim 1.2** - A §2254(d)(1) claim that trial counsel was ineffective for failing to move for a mistrial or to strike identification testimony that was hearsay as to the identification of Petitioner as shooter. Pet. at 12-13. |
| **Claim 1.3** - A §2254(d)(1) claim that trial counsel was ineffective for failing to move for a mistrial or to strike references to fact that the crimes were gang and drug related. Pet. 12-13. |
| **Claim 1.4** - Two related §2254(d)(2) claims for the unreasonable determination of facts located at pages 15 and 20-21 of the Petition. Pet. at 15, 20-21. Petitioner did not list specific facts that he was challenging, but merely claims a challenge. *Id*. |
| **Claim 1.5** - Two related §2254(d)(2) claims for the unreasonable determination of facts located at pages 15-19 of the Petition. Pet. at 15-19. Petitioner did not list specific facts that he was challenging, but merely claims a challenge. *Id*. |

| Chart 2 - Claim Family #2 |
|---|
| **Claim 2.1** - A §2254(d)(1) claim for ineffective assistance of trial counsel for failing to present evidence that petitioner's car could not have been used in the crime because it was inoperable. Pet. at 21-22. |
| **Claim 2.2** - A §2254(d)(1) claim for ineffective assistance of trial counsel for failing to impeach State's witnesses about the car they observed at the crime scene. Pet. at 23-27 |
| **Claim 2.3** - A §2254(d)(1) claim for ineffective assistance of trial counsel for failing to effectively cross Pruitt and Hobson regarding inconsistencies in their testimony concerning the event. Pet. at 23-27. |
| **Claim 2.4** - A §2254(d)(1) claim for ineffective assistance of counsel for failing to present evidence of Pruitt's withholding of testimony from police originally. Pet. at 25. |

| **Claim 2.5** - A §2254(d)(1) claim for ineffective assistance of trial counsel for failing to call petitioner's wife as an additional alibi witness. Pet. at 27-28. |
|---|
| **Claim 2.6** - A §2254(d)(1) claim for ineffective assistance of trial counsel for failing to object to the State showing Pruitt a photo that was already marked. Pet. at 28-29. |
| **Claim 2.7** - A §2254(d)(1) claim for ineffective assistance of trial counsel for failing to present expert testimony about the unreliability of eyewitness identifications. Pet. at 29-31. |
| **Claim 2.8** - A §2254(d)(1) claim for ineffective assistance of trial counsel for failing to object to testimony about Pruitt's military service. Pet. at 31-32. |
| **Claim 2.9** - A §2254(d)(1) claim for ineffective assistance of appellate counsel for failing to raise Claims 2.1-2.8, above, "including: trial counsel's failure to impeach State's witness and object to improper evidence." Pet. at 32-33. |
| **Claim 2.10** - The post-conviction Appellate Court erroneously affirmed the Circuit Court's dismissal without an evidentiary hearing. Pet. at 21. |
| **Claim 2.11** - A§2254(d)(2) claim for the unreasonable determination of facts located at page 35 of the Petition. Pet. at 35. Petitioner did not list specific facts that he was challenging, but merely claims a challenge. *Id.* |

| **Chart 3 - Claim Family #3** |
|---|
| Claim 3.1 - A §2254(d)(1) claim for ineffective assistance of appellate counsel for failing to assert ineffective assistance of trial counsel for not preserving for review a challenge to the trial Court's refusal to poll the jury. Pet. at 35-40. |
| Claim 3.2 - A §2254(d)(2) claim for the unreasonable determination of facts located at pages 40-41 of the Petition. Pet. at 40-41. Petitioner did not list specific facts that he was challenging, but merely claims a challenge. *Id.* |

## IV. Analysis

### A. Request for Evidentiary Hearing

Before addressing the merits of the claims at issue, the Court must first consider Petitioner's request for an evidentiary hearing. Petitioner has requested an evidentiary hearing regarding each of his three claim families. Pet. at 20, 34, 40. The AEDPA generally bars federal courts from holding evidentiary hearings to supplement the record. 28 U.S.C. § 2254(e)(2). Claims brought under Sections

2254(d)(1) and 2254(d)(2) are reviewed based solely on the state court record, without taking additional evidence by way of hearing. *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011); *Newman v. Harrington*, 726 F.3d 921, 927 (7th Cir. 2013); *Bland v. Hardy*, 672 F.3d 445, 450 (7th Cir. 2012). Here, because all of Petitioner's claims except one are based on Sections 2254(d)(1) and (2), *see supra* Charts 1-3, the Court will confine its review of those claims to the state court record. No evidentiary hearing is needed, or will be allowed, on those claims.

The sole claim that is not based on Sections 2254(d)(1) or (2) is Petitioner's unsupported Claim 2.10 that "the appellate Court erroneously affirmed the Circuit Court's dismissal without an evidentiary hearing." Pet. at 21. As explained below, *see infra* Part IV(C)(i), that claim is procedurally defaulted. Because that claim is defaulted, no evidentiary hearing is required. *Contreras v. Butler*, No. 13 C 7306, 2015 WL 5921732, at *12 (N.D. Ill. Oct. 9, 2015); *U.S. ex rel. Doll v. Cooper*, No. 96 C 368, 1998 WL 59648, at *8 (N.D. Ill. Feb. 9, 1998).

## B.    Claim Family No. 1

Claim Family No. 1 includes three sub-claims under section 2254(d)(1), and two sub-claims under Section 2254(d)(2). The (d)(2) claims are addressed below in a separate section regarding claims for an unreasonable factual determination. *See infra* Part 4(E)(i). As to the Section 2254(d)(1) claims (Claims 1.1-1.3), the state appellate court rejected those claims as meritless. The Respondent argues that habeas relief is unavailable on those claims "because the state court's decision is not

contrary to or an unreasonable application of *Strickland v. Washington*." Resp. at 14. The Court agrees.

On habeas review, this Court must determine whether the state court's application of the ineffective assistance of counsel standard was unreasonable, not whether defense counsel's performance fell below *Strickland v. Washington*, 466 U.S. 668 (1984). *See Harrington*, 562 U.S. at 101; *Long*, 2015 WL 6500128, at *8. The state court is granted "deference and latitude" that are not in operation when the case involves review under the *Strickland* standard itself. *Harrington*, 562 U.S. at 101; *Long*, 2015 WL 6500128, at *8. Finding that the state court's application of *Strickland* was unreasonable is a high bar, requiring a showing of "clear error." *Allen v. Chandler*, 555 F.3d 596, 600 (7th Cir. 2009).

Under *Strickland*, 466 U.S. at 688, 694, this Court must determine whether appellate counsel's performance fell below an "objective standard of reasonableness," and that this performance prejudiced Petitioner, that is, "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." There is a "strong presumption" that counsel performed effectively. *Allen*, 555 F.3d at 600.

The claims at issue here are as follows: (1.1) trial counsel was ineffective for promising in her opening statement that there would be evidence that Petitioner did not match the description of the suspect, when that evidence was inadmissible hearsay, and later referring to that evidence in closing argument even though it had not been admitted; (1.2) trial counsel was ineffective for failing to move for a

mistrial or to strike identification testimony that was hearsay as to the identification of Petitioner as shooter; and (1.3) trial counsel was ineffective for failing to move for a mistrial or to strike references to fact that the crimes were gang and drug related. Because the Appellate Court addressed these three claims together, this Court will as well.

Initially, the Court finds that the Illinois Appellate Court correctly articulated the *Strickland* standard, Ex. D at 8-9, so its decision was not "contrary to" federal law. *See Price v. Vincent*, 538 U.S. 634, 640 (2003) (state court decision not "contrary to" clearly-established federal law where state court identified applicable Supreme Court precedents and affirmed principles stated therein). At issue, then, is whether the state appellate court's application of the ineffective assistance of counsel standard was unreasonable. It was not.

Here, the state appellate court found that Petitioner did not satisfy the prejudice prong of *Strickland*. With regard to Claim 1.1 (counsel's use of the alternate identification in her opening and closing statements), the Court first reviewed the relevant statements by counsel, the testimony by Officer Gana that he did not recall receiving a description of the offender as having braids, light skin and a moustache, and defense counsel's failure to elicit a similar description from Officer Vasavid. The court then extensively reviewed the cases cited by Petitioner which stood for the proposition that unmet promises by trial counsel could be reversible error. Ex. D at 10-11, citing *People v. Ortiz*, 224 Ill. App. 3d 1065 (1992); *People v. Lewis*, 240 Ill. App. 3d 463 (1992); *but see People v. Gonzalez*, 339 Ill. App. 3d 914

(2003). It found that *Lewis* was wrongfully decided because the *Strickland* standard required more than just an assertion of prejudice, and that *Ortiz* was factually distinguishable because the evidence there was closely balanced. In fact, in *Ortiz*, the jury had given a note to the judge stating that it "didn't see enough evidence to convict." *Ortiz*, 224 Ill. App. 3d at 1073.

The state Appellate Court then distinguished *Ortiz* because, in Petitioner's case, the evidence was not closely balanced, so Petitioner could not show that he was prejudiced by counsel's actions. The Court specifically emphasized two eyewitnesses (Hopson and Pruitt) who had identified Petitioner as the shooter, the fact that the testimony of those eyewitnesses corroborated one another, and the concurrence of the physical evidence with that testimony. The Court also noted that Petitioner's car matched the descriptions given by Hopson and Pruitt. Finally, the court determined that the jury would have heard the same evidence (*i.e.*, from Pruitt and Hopson, among others) if counsel had not made the promise during opening statement or misrepresented Officer Gana's testimony in closing. Thus, the appellate court found that Petitioner failed to show a reasonable probability of a different outcome if counsel had not made the broken promises.

Based on the above, this Court cannot find that the decision of the appellate court was "clear error." *Allen*, 555 F.3d at 600. The overwhelming evidence at trial warranted the conclusion that Petitioner was the shooter. Counsel's mistakes in opening and closing did not change the actual evidence that was presented to the

jury. The Appellate Court's decision that Petitioner was not prejudiced by counsel's actions was not unreasonable. Petitioner's Claim 1.1 is barred by § 2254(d)(1).

The Appellate Court also addressed Petitioner's claims regarding evidence of drug and gang involvement (Claim 1.2), and hearsay identification testimony (Claim 1.3). It first summarized the supposedly objectionable evidence that was introduced at trial. When defense counsel cross-examined Pruitt, counsel asked why Pruitt did not identify herself to police. Pruitt responded that she did not identify herself because "it was gang and drug related," and "I really didn't want to get involved in that kind of mess." Ex. D at 14. Petitioner claimed that counsel's failure to move for a mistrial following the introduction of this evidence was ineffective assistance of counsel, especially when the State agreed prior to trial that it would not offer gang evidence. *Id*. Petitioner also challenged counsel's failure to object to hearsay identification testimony by Pruitt and Sergeant Wolverton. While the court declined to conclude that counsel's actions in not challenging this evidence was trial strategy, the Court again found that Petitioner had not established prejudice given the weight of evidence against him.

Based on the evidence in the record, the Court cannot find that this was "clear error." The evidence against the Petitioner was strong. Again, two witnesses provided both line-up and in court identifications of the Petitioner as the shooter. Hopson, who knew Petitioner previously, recognized Petitioner when he saw him drive slowly drive by the gas station multiple times while looking at Hopson threateningly. Ex. D at 2; Ex. R at V26-29, V80-81. Hopson had seen Petitioner in

the same red Oldsmobile Cutlass on a prior occasion. Ex. R at V27, V31-32. When the red car pulled into the station, Hopson observed Petitioner exit the car and pull up his black hood. Ex. D at 2; Ex. R at V39, V42-43. Hopson then saw Petitioner approach Thornton as Thornton raised his hands, and saw Petitioner shoot Thornton in the head. Ex. D at 2; Ex. R at V46-48. Additionally, Pruitt testified that she saw the shooter turn toward Thornton, who was standing nearby with his hands raised, and shoot him two times. Ex. D at 3; Ex. R at W64. Between the two shots, Pruitt testified that she saw the shooter's face because he turned toward her. Ex. D at 3; Ex. R at W65-66.

The testimony of Pruit and Hopson corroborated each other in several respects, and they both saw: (1) a red car pull into the gas station; (2) a man with a black hooded sweatshirt (Petitioner) approach Hopson; (3) Hopson reverse away while being shot at; (4) Petitioner turn toward Thornton; and (5) Petitioner shoot Thornton twice. Hopson named Petitioner as the shooter to police shortly after the shooting, and identified him from a photo array and a lineup. Ex. D at 4-5; Ex. R at V55- 57, V63-64, X74-76, X93-96. Pruitt independently identified petitioner in a lineup and at trial. Ex. D at 4-5; Ex. R at W66-67, W69-71, X96-97. The eyewitnesses and several police officers confirmed that the 24 hour gas station was very well lit. Ex. D at 4; Ex. R at V59, W44, W73, X14, X64-65. Finally, Hopson and Pruitt's testimony was corroborated by the physical evidence – including the autopsy, Petitioner's car, and five bullet casings fired from a single .40 caliber weapon.

Counsel's alleged error, of course, would not have changed this evidence. The jury would have heard all of this evidence. In light of the above, this Court cannot find that the appellate court's determination that Petitioner could not show prejudice was "clear error." Petitioner's claims 1.2 and 1.3 are therefore barred by § 2254(d)(1).

## C. Claim Family No. 2

Petitioner alleges eleven claims in Claim Family No. 2. Respondent contends, however, that those claims have been procedurally defaulted, and cannot be reviewed here. Under AEDPA, federal courts are barred from reviewing the merits of habeas claims for which state court remedies have not been exhausted. *Johnson v. Pollard*, 559 F.3d 746, 752 (7th Cir. 2009). Such failure to exhaust is called a "procedural default." *Woodford v. Ngo*, 548 U.S. 81, 92 (2006). Respondent argues that Petitioner's claims in Claim Family No. 2 are procedurally defaulted because he failed to fairly present those claims through at least one complete round of state court review. The Court agrees.

### i. Procedural Default

To protect the primary role of state courts in remedying alleged constitutional errors in state criminal proceedings, federal courts will not review a habeas petition unless the prisoner has fairly presented his claims "throughout at least one complete round of state-court review, whether on direct appeal of his conviction or in post-conviction proceedings." *Richardson v. Lemke*, 745 F.3d 258, 268 (7th Cir. 2014); 28 U.S.C. § 2254(b)(1). In Illinois, this means one full round of

appeals up to and including the filing of a PLA to the Illinois Supreme Court. *O'Sullivan*, 526 U.S. at 845-46; *Lewis v. Sternes*, 390 F.3d 1019, 1025 (7th Cir. 2004). Petitioner has not done this here, as he failed to present any of the claims from Claim Family No. 2 in: (1) any part of his direct appeal, Exs. A, E; or (2) his post-conviction PLA. Ex. O.

Arguing against this finding, Petitioner points to his motion for leave to file a late post-conviction PLA with the Supreme Court – which included all of Claim Family No. 2. Ex. Q. Petitioner contends that this motion, which was never formally filed and was rejected by the Court's clerk nearly a month after his first PLA was denied, should be sufficient to satisfy the one full round requirement. In support, Petitioner cites to the unpublished, non-precedential order in *Kizer v. Uchtman*, 165 Fed. App'x 465, 468 (7th Cir. 2006). While non-precedential, *Kizer*'s analysis is instructive and is frequently considered by Courts in this District. At issue in *Kizer* was whether the petitioner (Kizer) had procedurally defaulted by failing to pursue one full round of state court review. Kizer's *pro se* post-conviction petition was denied by the Circuit Court and he was appointed counsel for all subsequent stages. His counsel filed an appellate brief that only contested a single issue. Kizer, who had hoped to preserve a number of other claims for review, was not satisfied with that election. He therefore timely moved, on a *pro se* basis, to file *instanter* a supplemental brief. The brief attached to that motion included all of the federal claims Kizer wished to assert. The Appellate Court, after noting that

Kizer's attorney had already filed a brief on his behalf, summarily denied Kizer's motion.

A similar process occurred during the filing of Kizer's PLA with the Illinois Supreme Court. His counsel once again did not include all of the federal claims that Kizer wished to pursue, so Kizer again timely filed a *pro se* request to supplement the appeal. The Illinois Supreme Court denied that request without explanation. Because both of Kizer's motions to supplement had been denied, the State argued in the subsequent federal habeas action that the Petitioner had procedurally defaulted by failing to present his claims to the state Appellate Court and Supreme Court. The Seventh Circuit disagreed, noting that there was no indication that "Kizer's motions to supplement were filed improperly, too late, or otherwise so as to frustrate the efficient administration of the judicial process." *Id*. at 468. Instead, because Kizer's motions had not been filed "outside" of the Illinois "post-conviction appellate process," the sole deficiency the court addressed was Kizer's attempt to use hybrid representation. *Id*. It found that because the court may allow hybrid representation in its discretion, Kizer had presented his issues in a way that would allow the court to consider his constitutional claims. *Id*. at 468-69. As such, the court held that Kizer's claims were not procedurally defaulted. *Id*.

The matter before this Court, however, is factually distinguishable from *Kizer* because the brief Petitioner sought to file here was filed "outside" of the Illinois "post-conviction appellate process." *Id*. at 468. Unlike *Kizer*, where the *pro se* briefs at issue were filed during the pendency of the briefs filed by counsel, the brief

here was filed roughly one month after Petitioner's first petition for leave to appeal was denied. Nothing in Illinois law allows for such an approach. Indeed, allowing such an approach (the filing of additional PLAs at any point after a previous PLA was denied) would effectively prevent the closure of any appellate matter. The Court therefore finds that Petitioner's Family No. 2 claims were not presented to the state Supreme Court on post-conviction review. Those claims are thus procedurally defaulted as failing the "one full round" requirement.

The Court notes that Respondent also argues that Claim Family No. 2 is defaulted because Petitioner's motion for leave to file a late PLA was decided on an adequate and independent state law ground. A claim is procedurally defaulted if a state court declines to address a prisoner's federal claims because the prisoner failed to meet the state court's procedural requirements. *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991). However, to conclude that an independent and adequate basis exists, the state court must "clearly and expressly state" that "its judgment rests on a state procedural bar and does not reach the merits of a federal claim." *Gray v. Hardy*, 598 F.3d 324, 329 (7th Cir. 2010) (emphasis added). Here, the Supreme Court clerk's response made it clear that Petitioner's motion for leave to file a late PLA was not being accepted for at least one of two state law reasons, if not both: (1) Petitioner's counsel had already filed a PLA (hybrid representation); and (2) Petitioner's earlier PLA had already been denied (timeliness). Ex. Q. The letter did not say anything about federal issues in reaching its decision. Therefore, while this Court finds that the motion for leave to file a late PLA was not a proper

presentment of Petitioner's claims; and even if it were considered properly before the State Supreme Court, this Court would find that the motion was decided on an adequate and independent state law ground – and is, therefore, procedurally defaulted for that reason as well. These findings regarding procedural default bar this Court's consideration of Petitioner's Family No. 2 claims unless the Petitioner can show an exception to procedural default. Petitioner claims two exceptions here: (1) cause and prejudice; and (2) fundamental miscarriage of justice.

### ii. Cause and Prejudice

Petitioner argues that his procedural default should be excused due to ineffective assistance of counsel for: (1) failing to raise the family No. 2 claims on direct appeal; and (2) failing to raise those same claims in the post-conviction PLA. The Supreme Court defines "cause" sufficient to excuse procedural default as "some objective factor external to the defense" which prevents a petitioner from pursuing his constitutional claim in state court. *McCleskey v. Zant*, 499 U.S. 467, 493 (1991). "Prejudice is established if the issue not raised may have resulted in a reversal of the conviction or an order for a new trial." *Lee v. Davis*, 328 F.3d 896, 901 (7th Cir. 2003). "Attorney error that constitutes ineffective assistance of counsel is cause to set aside a procedural default." *Smith v. Gaetz*, 565 F.3d 346, 352 (7th Cir. 2009). However, the ineffective assistance claim must be presented to the state courts for one full round of review as an independent claim before it may be used to establish cause for a procedural default. *Id*. Here, Petitioner's claim for ineffective assistance of appellate counsel cannot serve as cause to excuse his failure to raise

Claim Family No. 2 on direct appeal, because the ineffective assistance of appellate counsel argument was not raised through one whole round of state court review. As with the rest of claim family No. 2 discussed above, Petitioner failed to include his claim for ineffective assistance of appellate counsel in his counseled post-conviction PLA. Ex. O. He thus cannot use his claim of ineffective assistance of appellate counsel to serve as cause for his failure to raise the remainder of claim family No. 2 on direct appeal.

Plaintiff separately argues he has shown cause and prejudice for failing to raise Claim Family No. 2 in the post-conviction PLA because he received ineffective assistance of counsel in filing his post-conviction PLA. However, post-conviction counsel's ineffectiveness cannot ordinarily excuse a procedural default. *Coleman v. Thompson*, 501 U.S. 722, 753-54 (1991). While the Supreme Court has crafted a narrow exception to *Coleman* for states that effectively prohibit ineffective assistance claims on direct appeal, *see Trevino v. Thaler*, 133 S. Ct. 1911, 1921 (2013); *Martinez v. Ryan*, 132 S. Ct. 1309, 1318-20 (2012), this narrow exception does not apply in Illinois under the circumstances here. *Long v. Butler*, 2015 WL 6500128, *12 (7th Cir. 2015); *Murphy v. Atchison*, No. 12-3106, 2013 WL 4495652, at *22 (N.D. Ill. Aug. 9, 2013) (collecting cases). As such, Plaintiff cannot use ineffective assistance of post-conviction counsel at the PLA stage as cause to excuse his procedural default here.

### iii. Fundamental Miscarriage of Justice

The court next turns to the fundamental miscarriage of justice exception, which applies in "situations where the constitutional violation has probably resulted in a conviction of one who is actually innocent." *Dellinger v. Bowen*, 301 F.3d 758, 767 (7th Cir. 2002). To show "actual innocence," a petitioner must present clear and convincing evidence that, but for the alleged constitutional error, no reasonable juror would have convicted him. *Id.* To satisfy this demanding standard, Petitioner "must support the innocence claim with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Morales v. Johnson*, 659 F.3d 588, 606 (7th Cir. 2011). The Seventh Circuit recently clarified that reliable evidence that can satisfy the "more likely than not" standard "is documentary, biological (DNA), or other powerful evidence: perhaps some non-relative who placed [the defendant] out of the city, with credit card slips, photographs, and phone logs to back up the claim." *McDowell v. Lemke*, 737 F.3d 476, 483 (7th Cir. 2013) (internal quotations and citations omitted).

Here, Petitioner argues only that it would be a fundamental miscarriage of justice not to excuse the procedural default that resulted from his failure to file a complete post-conviction PLA. Reply at 11. He does not specifically argue any new evidence in support of his contention that there was a fundamental miscarriage of justice. However, because Petitioner is proceeding *Pro Se*, the Court will independently consider whether the failure of trial counsel to introduce evidence

related to the inoperability of Petitioner's car on the day of the incident is sufficient to support a claim for actual innocence as cause.

In his state court post-conviction petition, Petitioner argued that his car was not running and, therefore, could not have been used in the shooting as the witnesses for the State had claimed. Pet. 21-22. In support, Petitioner presented the following evidence that was not shown at trial: (1) an affidavit from Petitioner's wife stating that she had been in an accident with the car which had left the vehicle inoperable and at the shop on the day of the incident; (2) an affidavit from the tow truck driver who retrieved the car on that same day; (3) a copy of the towing receipt; and (4) a copy of a receipt for work done on the car. However, as the post-conviction appellate court explained, there were numerous shortcomings in this evidence. The towing receipt number was not in the proper sequence, the writing on the tow receipt did not appear to be that of the tow company owner, and the writing and signature on the repair receipt were not that of the repair shop owner. Further, the affidavit of Petitioner's wife has an obvious built in bias. As such, the Court finds that this new evidence is not sufficient to show that – had it been introduced – no reasonable juror would have convicted Petitioner. The several issues mentioned above diminish the veracity and persuasiveness of this new evidence, and the state of the overwhelming evidence already before the jury, including two eye-witness identifications, strongly support the conclusion that Petition was the shooter. Petitioner thus has not shown cause adequate to excuse the procedural default of Claim Family No. 2.

### D. Claim Family No. 3

As set out in Chart 3, Petitioner alleges only one Section 2254(d)(1) claim in Family No. 3 – Claim 3.1.[4]  He alleges that "appellate counsel was ineffective for failing to raise trial counsel's ineffectiveness in not preserving for review a challenge to the trial court's refusal to poll the jury."  Pet. at 35.  The Respondent answers, however, that Plaintiff has procedurally defaulted Claim Family No. 3 by failing to raise it in one complete round of state court review.  Resp. at 32.  The Court agrees.

### i. Procedural Default

The Petitioner here failed to raise Claim 3.1 at all levels of either direct review or post-conviction review.  First, on direct appeal, Petitioner did not raise any claims related to polling the jury.  See Ex. A & E.  Second, while the Petitioner did raise Claim Family No. 3 in his amended post-conviction petition, he failed to do so at post-conviction appeal.  On post-conviction appeal, petitioner asserted only that appellate counsel was ineffective for failing to challenge the trial court's failure to poll the jury upon request, Ex. K at 28-29, abandoning any argument that appellate counsel was ineffective for failing to claim trial counsel's ineffectiveness in this regard.  Ex. I at C145; *see also* Pet. at 6.  With some exceptions not relevant here, an argument alleging ineffective assistance of appellate counsel (for failing to challenge a particular trial court error) is distinct from one alleging ineffective assistance of appellate counsel for failing to assert trial counsel's ineffectiveness (for failing to object to this trial court error).  *See Lewis v. Sternes*, 390 F.3d 1019, 1026

---

[4] The Section 2254(d)(2) claims is addressed in the final section of this Opinion.

(7th Cir. 2004) (asserting ineffective assistance of counsel for failing to raise certain claim is separate and independent from that underlying claim so that arguing the former does not also exhaust an argument on the latter). And each ground of ineffectiveness must be presented on one complete round of state court review. *Johnson v. Hulett*, 574 F.3d 428, 432 (7th Cir. 2009); *Pole v. Randolph*, 570 F.3d 922, 934-35 (7th Cir. 2009); *Stevens v. McBride*, 489 F.3d 883, 894 (7th Cir. 2007). Notably, the state appellate court also interpreted the brief as raising only ineffective assistance of appellate counsel for failing to challenge the trial court's failure to poll the jury, and not ineffective assistance of appellate counsel for not arguing that trial counsel was ineffective for failing to preserve the jury polling issue. Ex. N at 7, 8 n.2. Thus, Petitioner's habeas Claim 3.1 was not asserted in the state appellate court during post-conviction proceedings. Pet. 36-41; Ex. K at 28-29. It is procedurally defaulted.

### ii. Cause and Prejudice

Petitioner asserts that any failure to present the claim to the state appellate court was the fault of post-conviction appellate counsel. Pet. 36-37. This is not sufficient to serve as cause and prejudice and excuse Petitioner's procedural default. As explained previously, for ineffective assistance of counsel to serve as cause to excuse a default, that claim itself must rise to the level of a federal constitutional violation. *Edwards*, 529 U.S. at 451-52 (citing *Murray*, 477 U.S. at 488-89). Because petitioner had no right to counsel on post-conviction appeal, *see Coleman*,

501 U.S. at 756-57, attorney error at that stage cannot be cause. *Murray*, 477 U.S. at 488; *see also Anderson*, 227 F.3d at 901.

### E.     Claims under 28 U.S.C. § 2254(d)(2)

At various points in his Petition, the Petitioner has tacked on unsupported arguments that the state court made an unreasonable determination of fact under 28 U.S.C. § 2254(d)(2). Under Section 2254(d)(2), a state court decision involves an "unreasonable determination of the facts if it rests upon fact-finding that ignores the clear and convincing weight of the evidence." *Morgan v. Hardy*, 662 F.3d 790, 801 (7th Cir. 2011). A state court's "factual finding is never unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance. Rather, the state court's determination of the facts must have been an unreasonable error in light of the evidence presented to that court." *Collins v. Gaetz*, 612 F.3d 574, 586 (7th Cir. 2010) (internal quotations and citations omitted). Factual determinations of a state court are "presumed to be correct and hence not 'unreasonable,' unless a petitioner can show otherwise by clear and convincing evidence." *Conner v. McBride*, 375 F.3d 643, 649 (7th Cir. 2004).

Also relevant here, the habeas petition must describe the facts supporting each ground for relief – including claims of unreasonable factual determinations. *See* Rule 2(c)(2); *Mayle v. Felix*, 545 U.S. 644, 649 (2005); *Lloyd v. Van Natta*, 296 F.3d 630, 633 (7th Cir. 2002). Notice pleading is insufficient in a habeas petition. *Blackledge v. Allison*, 431 U.S. 63, 75 n.7 (1977); *Mayle*, 545 U.S. at 655-56. Claims that do not comply with Rule 2(c) cannot serve as the basis for federal habeas relief.

*See Socha v. Boughton*, 763 F.3d 674, 683 (7th Cir. 2014); *U.S. ex rel. Holland v. Rednour*, 761 F. Supp. 2d 776, 784 (N.D. Ill. 2010).

Petitioner has alleged a number of unreasonable determinations of fact with regard Claim Family No. 1 here, which the Court will address in turn. To the extent additional claims under Section 2254(d)(2) were alleged in relation to claim families No. 2 and 3, those claims are procedurally defaulted for the same reasons the Section 2254(d)(1) claims in those families were defaulted. *See Supra* Parts IV(C), IV(D).

### i. Claim Family No. 1

In the section of the Petition addressing Claim Family No. 1, Petitioner mentions the Section 2254(d)(2) standards four times. *See* Pet. at 15, 20-21. With regard to the first two, Petitioner: (1) argued that the appellate court's adjudication resulted in a decision that was based on an "unreasonable determination of the facts in light of the evidence presented in the State Court trial," Pet. at 15; and (2) stated that he "challenges the presumption of correctness of the state court's factual finding because he has rebutted this presumption with clear and convincing factual language." Pet. at 20-21. It is unclear from these assertions what specific factual determination Petitioner is challenging, and what alternative facts he advances in support. Petitioner provides neither piece of the requisite information. These assertions therefore cannot serve as a basis for habeas relief under Section 2254(d)(2) and Rule 2(c).

As for the third and fourth unreasonable factual determinations claimed by Petitioner in the section related to Claim Family No. 1, Petitioner states:

> (3) by "injecting her lack of credibility" into the trial, counsel committed error that interfered with the "proper functioning" of the adversarial process. Thus, the "factual determination was unreasonable," Pet. at 18, and

> (4) the appellate court asserted, it is reluctant to "judge counsel's motives" and that it would "disprove if she intended to misled the jury into believing there was evidence of another description when she knew there was not an never would be . . ." Thus, "this factual determination was also unreasonable in light of the evidence presented." Pet. at 18.

These claims also fail because they do not list any specific factual finding that the Petitioner is contesting, or the alternative fact he proposes in its place. Thus, under Rule 2(c) they cannot serve as the basis for habeas relief.

## V. Certificate of Appealability

Under § 2253(c)(2), a "certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." An applicant has made a "substantial showing" when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Resendez v. Knight*, 653 F.3d 445, 446-47 (7th Cir. 2011) (internal citations and quotations omitted). Here, the Court concludes that the Petitioner has not made a substantial showing of the denial of a constitutional right, nor has he shown that reasonable jurists would debate the resolution of his claims. Accordingly, the Court declines to issue a certificate of appealability.

## VI. Conclusion

The Petition for a Writ of Habeas Corpus [9] is denied, and the Court declines to issues a certificate of appealability. The Clerk is directed to enter a Rule 58 Judgment in favor of Respondent and against Petitioner. Civil case terminated.


IT IS SO ORDERED

Dated: November 30, 2015

United States District Court